IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHELLY J. CRAWFORD, ) | |
| ) | |
| Plaintiff, ) | Case No. 05 C 3205 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| WILMETTE PUBLIC SCHOOL DISTRICT 39, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shelly J. Crawford ("Crawford" or "Plaintiff") sued Wilmette Public School District 39 ("WPS" or "Defendant") for unlawful discrimination and retaliation against her on the basis of her disability in violation of the Americans with Disability Act, 42 U.S.C. § 12111 *et seq.* and 42 U.S.C. § 1983. Specifically, Plaintiff alleged that WPS failed to accommodate her disability, and discharged her on the basis of her disability. Additionally, Plaintiff alleged that WPS retaliated against her by refusing to give her contract work as a substitute teacher after she filed her charges with the Equal Employment Opportunity Commission ("EEOC").

On January 25, 2007, this Court granted WPS's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, finding that there was no genuine issue of material fact that Plaintiff knowingly and voluntarily released any claims against WPS. Plaintiff now moves, pursuant to Fed. R. Civ. P. 59(e), for partial reconsideration of this Court's January 25, 2007 Order, arguing that the release contained in Plaintiff's resignation agreement did not apply to Plaintiff's retaliation claim because that claim arose after the agreement was signed. Upon review, the Court agrees that the release contained in her resignation agreement, which was executed before her retaliation claim had even

accrued, cannot operate as a waiver of that retaliation claim. However, WPS is nevertheless entitled to summary judgment for the independent reason that Crawford has failed to identify any similarly situated employees who did not file an EEOC charge and were not denied opportunities to work as a substitute teacher. Accordingly, for the reasons stated herein, Plaintiff's Motion for Reconsideration is denied.

BACKGROUND

Crawford is a certified teacher with a college education and some post-graduate work towards a master's degree in education. (Def. SOF at ¶2.)[1] She suffers from multiple sclerosis, which condition requires her to use a motorized scooter for mobility. *Id.* Crawford began working for WPS in the 1994-95 school year as a substitute teacher. (Pltf. Resp. SOF at ¶ 4.) During the 1995-96 school year, Crawford worked as a special education paraprofessional and then, during the 1996-98 school years, she returned to substitute teaching. *Id.* Crawford worked as an English as a Second Language paraprofessional at Ramona School (elementary education) during the 1998-2002 school years. *Id.* She then worked as a building paraprofessional for the Ramona School during the 2002-03 school year. *Id.*

During the summer of 2003, WPS offered Crawford a position as a seventh-grade special education paraprofessional at the Wilmette Junior High School (the "Junior High"). (Def. SOF at

---

[1]This Memorandum Order and Opinion assumes familiarity with this Court's previous Order of January 25, 2007 and incorporates the statement of facts set forth therein. Accordingly, the abbreviated statement of facts presented herein sets forth the facts relevant to the resolution of the instant Motion for Reconsideration. The facts set forth herein are derived from the statements of facts filed in connection with WPS's Motion for Summary Judgment. WPS's Statement of Material Facts is cited as "Def. SOF at ¶ _"; Plaintiff's Response to WPS's Statement is cited as "Pltf. Resp. SOF at ¶ _"; Plaintiff's Statement of Additional Material Facts is cited as "Pltf. SOF at ¶ _"; and WPS's Response to Plaintiff's Statement of Additional Material Facts is cited as "Def. Resp. SOF at ¶ _."

2

¶ 5.) Crawford worked in that position until – after having been advised that she would be terminated for disciplinary reasons if she did not resign – Crawford signed a resignation agreement that made her resignation effective as of April 26, 2004. (Pltf. Resp. SOF at ¶ 6; Def. Resp. SOF at ¶ 23.) The resignation agreement between Crawford and WPS, dated May 20, 2004, includes a release provision that provides, in pertinent part:

> [Crawford] . . . and the Union . . . hereby release, discharge, and forever free the School District and the Board . . . of and from any and all claims, debts, dues, demands, liens, obligations, fees (including attorneys' fees), actions, or causes of action, of every kind or nature, at law or in equity, which the Employee or the Union may now have or claim to have or which may hereinafter accrue, whether known or unknown, anticipated or unanticipated, against the School District and the Board . . . by reason of any act done or omitted to be done connected with the past or present relationship between the parties arising out of [Crawford's] employment with the Board, except as contemplated by this Agreement. This release specifically includes, but is not limited to, rights or claims arising under the *Illinois School Code*, the *Illinois Human Rights Act*, Title VII of the *Civil Rights Act of 1964*, the *Age Discrimination in Employment Act of 1967*, as amended, the *Americans With Disabilities Act of 1990*, and Section 504 of *The Rehabilitation Act of 1973*, and any other applicable federal, state, or local statute, ordinance, or regulation or any collective bargaining agreement.

(Exh. V to Def. SOF at ¶ 6.)

In the months leading up to her resignation, Crawford attended several meetings with various WPS representatives to discuss issues with Crawford's performance. At one such meeting, on March 25, 2004, the Director of the Human Resources Department, Alice Reardon ("Reardon") and the assistant principal at the Junior High, Steven Smith ("Smith") advised Crawford that she could not continue in her position if her performance remained unsatisfactory, but that she could return to substitute teaching. (Def. Resp. SOF at ¶ 36.) Nevertheless, Smith placed Crawford on the "do not call" list for substitute teachers at the Junior High School as well as the McKenzie School. *Id.*

Crawford substitute taught on September 14, 2004 and again on October 28, 2004. *Id.* at ¶ 38. Crawford filed an EEOC charge of discrimination against WPS on January 4, 2005. *Id.* at ¶ 38. Crawford did not substitute teach for the remainder of the 2004-05 school year. *Id.* Certain substitute teachers substitute taught over 100 times during the 2004-05 school year and 284 substitute positions remained open during that year because there was "no sub available." *Id.* at ¶ 39. Plaintiff substituted over twenty times during the 2005-06 school year. (Pltf. Resp. SOF at ¶ 79.)

## STANDARD OF REVIEW

"A court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006) (citing *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). A Rule 59(e) motion enables a district court to "correct its own errors and thus avoid unnecessary appellate procedures." *Divane v. Krull Elec. Co.*, 194 F.3d 845, 848 (7th Cir. 1999) (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)).

**I.    The Release Provision in the Resignation Agreement Does Not Bar Plaintiff's Retaliation Claim Against WPS.**

"A release is a contract whereby a party abandons a claim to the person against whom the claim exists." *Fuller Family Holdings, LLC v. The Northern Trust Co.*, 371 Ill. App. 3d 605, 614 (Ill. App. Ct. 2007) (citing *Thornwood, Inc. V. Jenner & Block*, 344 Ill. App. 3d 15, 21 (Ill. App. Ct. 2003)). "As such, the interpretation of a release is governed by contract law." *Id.* (citing *Farm Credit Bank v. Whitlock*, 144 Ill.2d 440, 447 (1991)). "It is clear that a contractual release cannot

4

be construed to include claims not within the contemplation of the parties, and it will not be extended to cover claims that may arise in the future." *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 286 (2003) (citing *Carona v. Illinois Central Gulf R.R. Co.*, 203 Ill. App. 3d 947, 951 (Ill. App. Ct. 1990)). Indeed, "[w]here a releasing party was unaware of other claims, Illinois law restricts the release to the particular claims that are explicitly covered by the agreement." *Fuller Family Holdings,* 371 Ill. App. 3d at 614 (citing *Farm Credit Bank*, 144 Ill.2d at 447). "Releases are strictly construed against the benefitting party and must spell out the intention of the parties with great particularity." *Id*. (citing *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill.2d 378, 395 (1986)).

Crawford argues that this Court's Order granting WPS's Motion for Summary Judgment was based on a misapprehension of WPS's arguments as well as a clear error of law. Specifically, Crawford argues that the release of claims in her May 20, 2004 resignation agreement cannot operate to bar her retaliation claim because that claim "relates to her later relationship with Defendant as a substitute teacher during the 2004-2005 and 2005-2006 school years [which relationship] did not exist . . . when Crawford signed the resignation agreement." (Mem. in Support of Mtn. for Reconsideration at p. 3). WPS offers the tenuous argument that because "substitute teaching was part of [Crawford's] decision to sign the resignation agreement, . . . any claims based on her substitute teaching was [sic] covered by the release." (Def.'s Resp. to Mtn. for Reconsideration at p. 4).

Regardless of whether the availability of contract work as a substitute teacher factored into Crawford's decision to enter into the resignation agreement, it is clear that neither of the parties to this action could possibly have been aware of Crawford's retaliation claim at the time they signed

5

that agreement. The parties executed the resignation agreement on May 20, 2004. More than seven months later, Crawford filed an EEOC charge of discrimination against WPS on January 4, 2005. Crawford alleges that after she filed her EEOC charge, WPS retaliated against her by refusing to permit her to substitute teach for the remainder of the 2004-05 school year. Crawford's claim against WPS for that alleged act of retaliation could not possibly have been within the contemplation of the parties at the time they entered into the resignation agreement. Crawford had not yet filed her EEOC charge when she agreed to a release of claims against WPS. As such, any claim based on alleged retaliation against Crawford for having filed that EEOC charge cannot have been a claim that either of the parties intended to be waived upon execution of the resignation agreement. Accordingly, this Court's decision granting summary judgment in favor of WPS on Crawford's retaliation claim based on waiver was error.

**II.     WPS Is Nevertheless Entitled to Summary Judgment on Crawford's Retaliation Claim.**

Summary judgment is appropriate when "the pleadings, the depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must construe all facts in a light most favorable to the non-moving party and view all reasonable inferences in the non-moving party's favor to determine whether a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A material fact is one that is outcome-determinative under governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). In analyzing the facts for the purposes of a summary judgment, the court will "limit its analysis of the facts . . . to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of*

*Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). But a party must do more than rely on unsubstantiated assertions to defeat summary judgment. *Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Parties must cite to specific support in the record. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

In this case, WPS moved for summary judgment on Crawford's claim that WPS retaliated against her for filing an EEOC charge. A plaintiff can demonstrate retaliation through either the direct or the indirect method of proof. Both parties treat Crawford's retaliation claim as one proceeding solely under the indirect method. In a retaliation claim under the ADA, a plaintiff proceeding under the indirect method:

> must first establish a prima facie case of retaliation by demonstrating that after engaging in protected activity such as filing a charge, she was subjected to an adverse employment action even though she was performing her job satisfactorily, and no similarly situated employee who did not file a charge was subjected to the adverse employment action. The burden then shifts to the employer to present evidence of a non-invidious reason for the employment action at issue. If the employer does so, the burden shifts back to the employee to demonstrate that the employer's proffered reason is pretextual.

*Cassimy v. Bd. of Educ.*, 461 F.3d 932, 938 (7th Cir. 2006) (quoting *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005)).

In this case, WPS is entitled to summary judgment on Crawford's retaliation claim because Crawford has not identified any similarly situated employees who did not file a charge of discrimination and were treated more favorably than Crawford. "In order for an individual to be similarly situated to the plaintiff, the plaintiff must show that the individual is 'directly comparable to her in all material respects.'" *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). "Factors

7

relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." *Id.* (citing *Patterson*, 281 F.3d at 680; *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)). The similarly situated inquiry is not rigid or inflexible; it considers all relevant factors, the number of which will depend on the context of the particular case. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). With respect to those relevant factors, "an employee need not show complete identity in comparing [herself] to the better treated employee, but [she] must show substantial similarity." *Id.*

Crawford has not met her burden to demonstrate that no similarly situated employee who did not file an EEOC charge was subjected to the adverse employment action about which she complains – the denial of substitute teaching opportunities. In its Motion for Summary Judgment, WPS argued that there is no evidence to show that WPS retaliated against Crawford after she filed an EEOC charge. In response, Crawford pointed to Beverly Argenzio ("Argenzio") as a similarly-situated substitute teacher who did not complain of discrimination and who substituted more often. (Pltf.'s Mem. in Opp. to Mtn. for Summary Judgment at p. 14). But Crawford's statement of additional material facts did not identify Argenzio as a similarly situated individual – only as a substitute teacher who substitute taught more often than did Crawford. And WPS admitted only that Argenzio substitute taught more frequently than Crawford – not that Argenzio and Crawford are similarly situated.

Ultimately, the proposition that Argenzio and Crawford are similarly situated is supported only by Crawford's conclusory assertion. Crawford offers no evidence whatsoever that she and Argenzio dealt with the same supervisors, were subject to the same standards, or that they had

8

comparable education, experience or qualifications. Indeed, the only facts in the record about Argenzio and Crawford from which this Court could possibly conclude that Crawford and Argenzio are similarly situated are: (1) that Argenzio and Crawford are both female; and (2) that Argenzio and Crawford are both substitute teachers. That is not enough. Crawford's bald assertion that she and Argenzio are similarly situated is not sufficient to make out her prima facie case of retaliation. *Greer*, 267 F.3d at 729 ("a party cannot defeat summary judgment by relying on unsubstantiated assertions"); *see also*, *Cannon-Stokes v. Potter*, No. 03 C 1942, 2005 U.S. Dist. LEXIS 26751, *41-42 (N.D. Ill. Nov. 3, 2005) (granting defendant's motion for summary judgment on plaintiff's retaliation claim because, *inter alia*, "the court cannot determine whether these employees were similarly situated to Cannon-Stokes because she has not offered evidence regarding their job responsibilities, medical restrictions, supervisors, qualifications, or whether they engaged in similar conduct."). Construing all facts – as articulated in the parties' Local Rule 56.1 statements – in a light most favorable to Crawford and viewing all reasonable inferences in her favor, there is no genuine issue for trial as to whether WPS treated any similarly situated individuals who did not file an EEOC charge more favorably than it treated Crawford. Accordingly, summary judgment in favor of WPS, while improperly granted on the basis of the release provision in the resignation agreement, is nevertheless appropriate in this case.

CONCLUSION

Upon reconsideration of this Court's January 25, 2007 Order, this Court finds that the resignation agreement does not operate as a waiver of Plaintiff's retaliation claim against WPS. However, WPS is nevertheless entitled to summary judgment on Plaintiff's retaliation claim because

Plaintiff has failed to identify any similarly situated employees who did not file an EEOC charge and were treated more favorably.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 12, 2007